IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**RICHARD LEE SMITH, JR.,** individually
and on behalf of persons similarly situated,

Plaintiff,

v.

**MATT MARTORELLO** and **EVENTIDE
CREDIT ACQUISITIONS, LLC**,

Defendants.

Case No. 3:18-cv-1651-AC

**ORDER**

**Michael H. Simon, District Judge.**

Plaintiff Richard Lee Smith, Jr. (Smith) bring this putative class action against

Defendants Matt Martorello (Martorello) and Eventide Credit Acquisitions, LLC (Eventide).

Before the Court is Martorello's Motion to Dismiss Smith's First Amended Complaint (FAC) for

lack of personal jurisdiction and failure to state a claim. On January 5, 2021, United States

Magistrate Judge John V. Acosta issued Findings and Recommendation in this case,

recommending that the Court deny Martorello's motion to dismiss. The Court has reviewed *de

novo* Judge Acosta's thorough and well-reasoned Findings and Recommendation, as well as

Martorello's objections and Smith's response. Because Smith has adequately alleged and

established facts showing the Court's personal jurisdiction over Martorello and adequately alleged facts creating plausible claims that Martorello offered usurious loans that violated the Racketeer Influence and Organized Crime Act (RICO) and was unjustly enriched by those loans, the Court adopts Judge Acosta's Findings and Recommendation as clarified, modified, and supplemented below.[1]

Smith alleges that Martorello orchestrated a lending scheme that charged Smith and other Oregonians usurious rates—in Smith's case, a 527 percent annualized rate of interest—for short-term loans. Smith received his loan online from Big Picture Loans, LLC (Big Picture), a lender ostensibly created and controlled by the Lac Vieux Desert Band of Lake Superior Chippewa Indians (the Tribe), a Native American tribe. Ostensible, however, is the only sense in which the Tribe created or controlled Big Picture, according to Smith's FAC and accompanying exhibits, which total nearly 400 pages.

As alleged by Smith, Martorello created Big Picture to insulate himself from liability and rebrand his lending operation after an enforcement action had been brought by the State of New

---

[1] Under the Federal Magistrates Act (Act), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party files an objection to a magistrate judge's findings and recommendations, "the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3). For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record." The Court did that here.

York against Martorello and the Tribe's prior lending entities, Red Rock Tribal Lending (Red Rock), a tribal entity, and Bellicose Capital.[2] *See Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 114-18 (2d Cir. 2014). Martorello owned and controlled Bellicose, and Bellicose ran Red Rock's day-to-day operations. Soon after the court permitted New York's enforcement action to proceed, Martorello instructed the Tribe to rebrand Red Rock as Big Picture. Martorello then caused the Tribe to assume ownership of Bellicose under the name "Ascension Technologies, LLC" (Ascension). Big Picture relinquished daily operations to Ascension, even though Ascension employs no members of the Tribe. Thus, just as Bellicose in fact ran Red Rock's day-to-day operations, Ascension ran the operations of Big Picture.

The Tribe purchased Ascension from Martorello with a $300 million promissory note issued to Defendant Eventide, even though Ascension appears to be worth only a small fraction of that amount. Martorello created Eventide shortly before the Tribe acquired Ascension, and Martorello continues to control and largely own Eventide. The promissory note provides Eventide with leverage over Ascension and therefore over Big Picture. Eventide retains significant authority to decide who leads Ascension (Ascension's manager is a close associate of Martorello), set lending policies and block changes in interest rates that Ascension charges for Big Picture's loans to the putative class members, and even decide in which jurisdiction Ascension markets Big Picture's lending services. Eventide receives the bulk of Big Picture's revenues, while the Tribal entities receive no more than six percent of revenues. Also according to Smith, most of Big Picture's and Ascension's employees work in the Philippines, Mexico, the Virgin Islands, or Puerto Rico. The few Tribal members whom Big Picture employs are paid only minimum wages and perform only menial or administrative tasks.

---

[2] The Court observes that this is an interesting name for a lending company.

PAGE 3 – ORDER

In his motion to dismiss, Martorello invokes the Tribe's sovereignty. Martorello, however, is not a member of the Tribe. Nor is Eventide a tribal entity. Indeed, the tribal entities previously settled with Smith in litigation pending before the United States District Court for the Eastern District of Virginia. ECF 94. Still, Martorello emphasizes that the Fourth Circuit has held that Big Picture and Ascension are "arms" of the Tribe, *see Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 174 (4th Cir. 2019),[3] and argues that failure to grant his motion would "disrespect" the Tribe's sovereignty.

Martorello's reliance on tribal sovereignty is misplaced. The Court's decision necessarily turns on Smith's well-pleaded factual allegations, which must be accepted as true at this stage of the litigation. Because Smith has plausibly alleged that Martorello, who is not a member of the Tribe, controls Big Picture's and Ascension's lending operations, neither the Court's exercise of personal jurisdiction over Martorello nor permitting Smith's RICO and unjust enrichment claims to proceed violates tribal sovereignty.

In a motion to dismiss for lack of personal jurisdiction brought under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving that the court's exercise of jurisdiction is proper. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When resolving such a motion on written materials, rather than after an evidentiary hearing, the court need "only inquire into whether the plaintiff's pleadings and affidavits make a *prima facie* showing of personal jurisdiction." *Id.* (quotation marks omitted) (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)). Although a plaintiff may not rest solely on the bare allegations of his complaint, uncontroverted allegations

---

[3] The Court notes that the United States District Court for the Eastern District of Virginia found that Martorello misled the Fourth Circuit about his role in creating Big Picture and Ascension. *Williams v. Big Picture Loans, LLC*, 2020 WL 6784352, (E.D. Va. Nov. 18, 2020).

must be taken as true. *Id.* In addition, conflicts between the parties over statements in affidavits or declarations must be resolved in the plaintiff's favor. *Id.*

Martorello argues that, because the Fourth Circuit found that Big Picture was an arm of the Tribe, *see Williams*, 929 F.3d at 174, attributing Big Picture's or Ascension's actions to Martorello improperly "stamp[s] out the Tribe's" sovereignty. Def.'s Objs. (ECF 148) at 21. *Williams*, however, provides no shield for Martorello. Smith alleges—and supports with evidence—that Martorello controls Big Picture and Ascension, including deciding who leads Ascension and therefore who manages Big Picture's day-to-day operations, decides where Big Picture markets its loans, and determines the criteria by which Big Picture makes lending decisions. The Fourth Circuit's decision—which is not binding on this Court, *see Lum v. Jensen*, 876 F.2d 1385, 1387 (9th Cir. 1989) ("Absent binding precedent, we look to all available decisional law, including the law of other circuits . . . .") (emphasis added)—does not change the Court's obligation to treat Smith's factual allegations as true, *see AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020), and to resolve any conflicts between facts contained in declarations or affidavits in favor of Smith, *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 861-62 (9th Cir. 2003). Because Smith's allegations and evidence must be treated as true at this stage, they establish that Martorello personally controls Big Picture's lending activity, including causing Big Picture's loans to be offered specifically in Oregon. Thus, Smith has made a *prima facie* showing of personal jurisdiction over Martorello.

Similarly, the Court's obligation to treat Smith's well-pleaded facts as true when ruling on Martorello's motion to dismiss compels the Court to deny Martorello's motion to dismiss brought under Rule 12(b)(6). A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks

sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

Martorello argues that the Court should enforce the choice of law and forum selection clause in Smith's loan agreement and that failure to do so ignores the Tribe's sovereign interest in enforcing its contracts. The Findings and Recommendation, however, identified four independently sufficient bases for declining to enforce the choice of law and forum selection clause.[4] One basis was that the inclusion of the clauses stemmed from fraud, coercion, or

---

[4] The Court declines to adopt the portion of the Findings and Recommendation finding that the choice of law and forum selection clause is unenforceable because its requires Smith to seek relief through "Tribal Dispute Resolution." *See* Findings & Recommendations (ECF 145) at 35-38. Unlike tribal choice of law provisions in online payday loan agreements that other courts have rejected as unenforceable prospective waivers, *see, e.g.*, *Gibbs v. Haynes*

overreach. *See Petersen v. Boeing Co.*, 715 F.3d 276, 282 (9th Cir. 2013) (holding that a forum

selection clause is unenforceable where "the party resisting enforcement" shows that "the

inclusion of that clause in the contract was the product of fraud or coercion") (quoting *Richards

v. Lloyd's of London*, 135 F.3d 1289, 1297 (9th Cir. 1998) (internal quotation and citation

omitted)). Smith alleged that he was pressured to sign the loan during a telephone call even

though he was not afforded an opportunity to review the documents, was not informed of the

exorbitant interest rate, and was not informed that the loan was being offered under the Tribe's

law, which allowed interest rates much higher than does Oregon law. *See id.* at 282-83 (finding

that a plaintiff alleged fraud or coercion when he alleged that he was pressured to sign an

employment contract containing a Saudi Arabia forum selection without having read the contract

or being informed of the forum selection clause). *Petersen* was a faithful application of the

pleading standard, not an affront to Saudi Arabia's sovereignty. The same is true here with

respect to the Tribe's sovereignty.

Next, Martorello argues that, for two reasons, allowing Smith's RICO claim against

Martorello to proceed against him represents an affront to the Tribe's sovereignty. First, to

prevail on a RICO claim, a plaintiff must show that the defendant was the proximate cause of the

plaintiff's injury. *Holmes v. Secs. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992). To satisfy this

---

*Investments, LLC*, 967 F.3d 332, 341-42 (4th Cir. 2020), the choice of law and forum selection
clause here does not state that federal law is inapplicable to resolution of disputes arising from
the loan. Indeed, the loan agreement states that the loan is governed by Tribal law, including "the
[Tribal Financial Services Regulatory] Code [(TFSRC)] as well as applicable federal law."
ECF 46-1. The TFSRC further provides that a Tribal Council must enforce a non-exhaustive list
of federal consumer protection laws. TFSRC ¶ 7.2. In cases involving choice of law and forum
selection clauses with similar language, courts have found that the clause is not an unenforceable
prospective waiver. *See Gibbs v. Stinson*, 421 F. Supp. 3d 267, 303-04 (E.D. Va. 2019). For now,
the Court concludes that the more prudent approach is simply to decline to find that the choice of
law and forum selection clause is an unenforceable prospective waiver.

requirement, a plaintiff must show that the defendant's conduct directly caused the plaintiff's injury. *Harmoni Int'l Spice, Inc. v. Hume*, 914 F.3d 648, 651 (9th Cir. 2019). Martorello argues that because Smith's loan was from Big Picture and because the Fourth Circuit held that Big Picture is an arm of the Tribe, Martorello was not the direct cause of any harm that Smith suffered. This argument fails for the same reasons that Martorello's personal jurisdiction argument failed: it ignores Smith's well-pleaded allegations that Martorello *personally* controlled Big Picture's lending operations. When those allegations are treated as true, as this Court must do at this stage of the lawsuit, Smith satisfies RICO's proximate cause requirement. *See Brice v. Plain Green, LLC*, 372 F. Supp. 3d 955, 985 (N.D. Cal. 2019) (finding that, in a civil-RICO case, defendants who "were instrumental in setting up, and knowingly set up, an enterprise whose sole purpose was to collect illegal debts" were the proximate cause of plaintiff's injury).

Second, because Smith's RICO claim is brought under 18 U.S.C. § 1965(c), Smith must allege that Martorello engaged in a pattern of racketeering activity. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Smith alleges that Martorello engaged in wire and mail fraud to withdraw funds from borrowers' bank accounts. *See* 18 U.S.C. § 1961(1) (defining racketeering activity to include wire and mail fraud). Martorello argues that the Court would undermine tribal sovereignty were it to find that Martorello's actions related to loans that are legal under tribal law nevertheless can constitute RICO predicates. Again, Martorello ignores that Smith has plausibly alleged that Martorello's *purpose* in creating the tribal entities was to unlawfully avoid state usury laws. The Court does not offend tribal sovereignty by treating as RICO predicates intentional efforts to violate the law. *See Otoe-Missouria Tribe of Indians*, 769 F.3d at 114 ("[A] tribe has no legitimate interest in selling an opportunity to evade state law."). Finally, the Court has considered Martorello's remaining objections and finds them unpersuasive.

The Court ADOPTS Judge Acosta's Findings and Recommendation (ECF 145) as clarified, modified, and supplemented in this Order and DENIES Martorello's Motion to Dismiss (ECF 106).

**IT IS SO ORDERED.**

DATED this 16th day of March, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge