Steve D. Larson, OSB No. 863540
Email: slarson@stollberne.com
Steven C. Berman, OSB No. 951769
Email: sberman@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

Michael A. Caddell (admitted pro hac vice)
Email: mac@caddellchapman.com
Cynthia B. Chapman (admitted pro hac vice)
Email: cbc@caddellchapman.com
John B. Scofield, Jr. (admitted pro hac vice)
Email: jbs@caddellchapman.com
Amy E. Tabor (admitted pro hac vice)
Email: aet@caddellchapman.com
CADDELL & CHAPMAN
628 East 9th Street
Houston, TX 77007
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| RICHARD LEE SMITH *individually and on behalf of persons similarly situated,*<br><br>        *Plaintiff,*<br><br>v.<br><br>MATT MARTORELLO, *et al.*<br><br>        *Defendants*. | Case No. 3:18-cv-01651-AR<br><br>**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

# TABLE OF CONTENTS

MOTION FOR CLASS CERTIFICATION ................................................................. 1

I. INTRODUCTION ................................................................................................ 2

II. STATEMENT OF FACTS .................................................................................... 5

    A.    The Tribal Lending Enterprise was Created in an Attempt to Evade State Usury Laws. ........................................................................................... 5

    B.    The Initial Contract with Red Rock Provided Martorello with Complete Control Over the Business, as well as Virtually All Profits. .................................. 6

    C.    Regulators Immediately Put Martorello on Notice that He was Violating State Law. ........................................................................................... 6

    D.    Martorello Pushed for Re-Branding of Red Rock to Big Picture Loans. ............... 7

    E.    Martorello Formed Eventide to Maintain Control of the Lending Enterprise. ....... 8

    F.    The Restructuring Documents Ensured Martorello's Control. ............................. 9

    G.    Plaintiff Richard Smith Paid Principal and Interest at Usurious Rates as a Result of Defendants' Predatory Lending Scheme. ................................................ 11

III. ARGUMENT ..................................................................................................... 11

    A.    The Court Should Certify the Class. ........................................................... 11

        1.    The Class Is Ascertainable and So Numerous that Joinder Is Impracticable. .................................................................................. 11

        2.    There Are Common Questions of Law or Fact. .................................... 13

        3.    The Claims of the Proposed Class Representatives Are Typical. ............. 15

        4.    The Proposed Class Representatives Will Adequately Represent the Class. ...................................................................................... 17

    B.    Questions of Law or Fact Common to the Class Predominate. ........................... 19

        1.    Common Issues About the Underlying Allegations Predominate. ........... 19

        2.    The Court May Apply Oregon Law Uniformly to the Class's Claims. ....................................................................................... 22

    PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

3.   Common Issues Predominate Because Every Class Member Entered into a Standard Form Loan Agreement to Pay Usurious Interest Rates.............................................................................................. 23

4.   Common Questions Predominate About Enforcement of the Exculpatory Provisions of the Form Loan Agreement. ........................... 24

5.   Common Questions Predominate About Plaintiff's RICO Claims........... 24

6.   Common Questions of Law or Fact Predominate in the Claims for Unjust Enrichment. .................................................................... 25

7.   Common Issues Predominate in Calculating Damages. ........................... 25

C.   In the Alternative, if the Court Determines that Oregon Law May Not Be Applied to the Class's Claims, the Court Should Certify the Oregon Subclass........................................................................................ 27

D.   A Class Action Is Superior to Other Methods for Fair and Efficient Adjudication.................................................................................. 27

IV. CONCLUSION.................................................................................... 29

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

## TABLE OF AUTHORITIES

### CASES

*Abdeljalil v. Gen. Elec. Capital Corp.*,
    306 F.R.D. 303 (S.D. Cal. 2015) ...................................................................... 27

*Abdullah v. U.S. Sec. Associates, Inc.*,
    731 F.3d 952 (9th Cir. 2013), *cert. denied*, 574 U.S. 815 (2014)..................................... 19

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591, 117 S.Ct. 2231 (1997)......................................................................... 28

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
    568 U.S. 455, 133 S. Ct. 1184 (2013)............................................................................ 19

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ...................................................................................... 16

*Azar v. Blount Int'l Inc.*,
    No. 3:16-cv-0483-SI, 2019 WL 7372658 (D. Or. Dec. 31, 2019)............................ 20, 28

*Butler v. Sears, Roebuck & Co.*,
    727 F.3d 796 (7th Cir. 2013), *cert. denied*, 571 U.S. 1196 (2014)................................... 20

*Cardizem CD Antitrust Litig.*,
    200 F.R.D. 297 (E.D. Mich. 2001) ............................................................................ 26

*Carlin v. DairyAmerica, Inc.*,
    328 F.R.D. 393 (E.D. Cal. 2018) ............................................................................... 12

*Carnegie v. Household Int'l, Inc.*,
    376 F.3d 656 (7th Cir. 2004) ...................................................................................... 29

*Costelo v. Chertoff*,
    258 F.R.D. 600 (C.D. Cal. 2009) ............................................................................... 16

*Crawford v. Equifax Payment Servs., Inc.*,
    201 F.3d 877 (7th Cir. 2000) ...................................................................................... 28

*Deposit Guar. Nat'l Bank v. Roper*,
    445 U.S. 326, 100 S. Ct. 1166 (1980)......................................................................... 11

*Duggan v. Martorello*,
    No. 18-12277-JGD, ___ F. Supp. 3d ___, 2022 WL 952183
    (D. Mass. March 30, 2022 .................................................................................... 11, 24

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ........................................................................ 11, 16

*Erica P. John Fund, Inc. v. Halliburton Co*.,
    563 U.S. 804, 131 S.Ct. 2179 (2011) .................................................................. 19

*Galloway v. Williams*,
    No. 3:19-cv-00470-REP, (E.D. Va. Dec. 1, 2020) ........................................... 12

*Gen. Tel. Co. v. E.E.O.C.*,
    446 U.S. 318 (1980) ........................................................................................... 12

*Goldenstein v. Repossessors Inc.*,
    815 F.3d 142 (3d Cir. 2016) ............................................................................... 16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................................... 19

*Hanon v. Dataproducts Corp*.,
    976 F.2d 497 (9th Cir. 1992) ............................................................................. 15

*Haynes v. Logan Furniture Mart, Inc*.,
    503 F.2d 1161 (7th Cir. 1974) ........................................................................... 28

*Henry v. Cash Today, Inc.*,
    199 F.R.D. 566 (S.D. Tex. 2000) ...................................................... 5, 17, 21, 28

*In re Checking Account Overdraft Litig.*,
    307 F.R.D. 630 (S.D. Fla. 2015) ........................................................................ 25

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig*.,
    691 F.2d 1335 (9th Cir. 1982) ............................................................................. 5

*In re Hyundai & Kia Fuel Econ. Litig*.,
    926 F.3d 539 (9th Cir. 2019) ............................................................................. 23

*In re Magnetic Audiotape Antitrust Litig.*,
    No. 99 CIV. 1580 (LMM), 2001 WL 619305 (S.D.N.Y. June 6, 2001) ........... 26

*In re Packaged Seafood Prod. Antitrust Litig.*,
    332 F.R.D. 308 (S.D. Cal. 2019), *aff'd sub nom. Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ............................... 3, 22

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
    *No. 3:15-md-2633-SI*, 2019 WL 3410382 (D. Or. July 29, 2019) .................... 23

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) ...................................................................... 23

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

*Inetianbor v. CashCall, Inc.*,
No. 13-cv-60066-JIC, (S.D. Fla. Sept. 19, 2016) .................................................... *passim*

*Kay v. Wells Fargo & Co.*,
247 F.R.D. 572 (N.D. Cal. 2007) ................................................................... 17

*Keegan v. Am. Honda Motor Co., Inc.*,
284. F.R.D. 504 (C.D. Cal. 2012) ................................................................. 27

*Klay v. Humana, Inc.*,
382 F.3d 1241 (11th Cir. 2004) ................................................................... 24

*Krakauer v. Dish Network, L.L.C.*,
925 F.3d 643 (4th Cir. 2019) ........................................................... 23, 24, 26

*Larisa's Home Care, LLC v. Nichols-Shields*,
404 P.3d 912 (Or. 2017) ............................................................................ 25

*Lerwill v. Inflight Motion Pictures, Inc.*,
582 F.2d 507 (9th Cir. 1978) ..................................................................... 18

*Leyva v. Medline Indus.*,
716 F.3d 510 (9th Cir. 2013) ..................................................................... 28

*MacDonald v. Cashcall, Inc.*,
333 F.R.D. 331 (D.N.J. 2019) ....................................................... 5, 15, 17, 25

*Madden v. Midland Funding, LLC*,
237 F. Supp. 3d 130 (S.D.N.Y. 2017) ...................................................... 15, 21

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ..................................................................... 19

*Meyer v. Portfolio Recovery Associates, LLC*,
707 F.3d 1036 (9th Cir. 2012), *cert. denied*, 569 U.S. 975 (2013)................................. 16

*Nat'l Coalition of 7-Eleven Franchisees v. The Southland Corp.*,
210 F.3d 384 (9th Cir. 2010) ..................................................................... 23

*O'Donovan v. CashCall, Inc.*,
278 F.R.D. 479 (N.D. Cal. 2011) ................................................................. 17

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ..................................................................... 22

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*,
188 F.R.D. 365 (D. Or. 1998) ..................................................................... 12

PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

*Otoe-Missouria Tribe v. N.Y. Dep't of Fin. Servs.*,
   974 F. Supp. 2d 353 (S.D.N.Y. Sept. 2013) ........................................................ 7

*Panache Broad. of Pa., Inc. v. Richardson Elecs., Ltd.*,
   No. 90 C 6400, 1999 WL 342392 (N.D. Ill. May 14, 1999) .............................. 26

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ................................................................... 13, 16

*Powell v. Sys. Transp., Inc.*,
   83 F. Supp. 3d 1016 (D. Or. 2015) ................................................................. 22

*Purdie v. Ace Cash Express*,
   2003 WL 22976611, (N.D. Tex. Dec. 11, 2003) ........................................ 15, 21

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Serv., Inc.*,
   601 F.3d 1159 (11th Cir. 2010) ...................................................................... 23

*Sali v. Corona Reg'l Med. Ctr.*,
   909 F.3d 996 (9th Cir. 2018) .......................................................................... 19

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
   323 F.3d 32 (1st Cir. 2003).............................................................................. 23

*Smith v. Martorello*,
   No. 3:18-cv-1651-AC, 2021 WL 981491 (D. Or. Mar. 16, 2021).................... 10

*Soutter v. Equifax Info. Servs., LLC*,
   307 F.R.D. 183 (E.D. Va. 2015) ..................................................................... 28

*Spinelli v. Capital One Bank*,
   265 F.R.D. 598 (M.D. Fla. 2009)..................................................................... 21

*States v. Philip Morris USA*,
   316 F. Supp. 2d 19 (D.D.C. 2004) .................................................................... 4

*Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ........................................................................ 16

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442, 136 S.Ct. 1036 (2016)............................................................... 20

*United States v. Biasucci*,
   786 F.2d 504 (2d Cir. 1986).............................................................................. 4

*Upshaw v. Georgia (GA) Catalog Sales, Inc.*,
   206 F.R.D. 694 (M.D. Ga. 2002) ......................................................... 5, 15, 21

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

*Veal v. Crown Auto Dealerships, Inc.*,
    236 F.R.D. 572 (M.D. Fla. 2006) ........................................................... 21

*Villanueva v. Liberty Acquisitions Servicing, LLC*,
    319 F.R.D. 307 (D. Or. 2017) ................................................................... 5

*Wakefield v. ViSalus, Inc.*,
    No. 3:15-cv-01857-BR, 2017 WL 11510073 (D. Or. June 23, 2017) ............... 5

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338, 131 S. Ct. 2541 (2011) ............................................... 13, 19

*White v. E-Loan, Inc.*,
    2006 WL 2411420 (N.D. Cal. 2006) ..................................................... 28

*Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*,
    2006 WL 2642528 (N.D. Cal. Sept. 14, 2006) ....................................... 18

*Williams v. Big Picture Loans, LLC*,
    339 F.R.D. 46 (E.D. Va 2021) ................................................. 4, 12, 14, 20

*Williams v. Big Picture Loans, LLC*,
    No. 3:17-cv-00461, 2020 WL 6784352 (E.D. Va. Nov. 18, 2020) ........... 6, 8, 9

*Williams v. Big Picture Loans, LLC*,
    No. 3:17-cv-461, 2021 WL 2930976 (E.D. Va. July 12, 2021) ................. 4, 24

*Williams v. Mohawk Indus., Inc.*,
    568 F.3d 1350 (11th Cir. 2009) ............................................................ 24

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) .............................................................. 28

*Zenith Radio Corp.* v. *Hazeltine Research, Inc.*,
    395 U.S. 100, 89 S. Ct. 1562 (1969) ..................................................... 26

*Zinser v. Accufix Research. Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) .............................................................. 22

## Statutes

18 U.S.C. § 1961(6) ................................................................................. 4, 16

18 U.S.C. § 1962(c) ................................................................................ 16, 18

18 U.S. C. § 1962(d) ....................................................................................18

18 U.S. C. § 1962(c)-(d) ............................................................................... 4

PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

GA. CODE ANN. §§ 7-3-5, 7-3-6, 7-3-8 ............................................................... 3

GA. CODE ANN. § 7-3-29(a) ...................................................................... 3, 22

MD. CODE, COM. LAW §§ 12-14, 12-314 ...................................................... 3, 22

MD. CODE, COM. LAW §§ 12-302, 12-306 ......................................................... 3

N.C. GEN. STAT. § 24-1.1(c) .......................................................................... 3

N.C. GEN. STAT. § 53-166(c) ................................................................... 3, 22

ORS § 725.045 .......................................................................................... 3

ORS § 725.045(1) ...................................................................................... 3

ORS § 725.340(1) ...................................................................................... 3

ORS § 82.010 ............................................................................................ 3

ORS § 82.010(4) ........................................................................................ 3

## RULES

FED. R. CIV. P. 23 ................................................................................. 1, 11

FED. R. CIV. P. 23 (a)(1) ............................................................................ 11

FED. R. CIV. P. 23(a)(3) ............................................................................. 15

FED. R. CIV. P. 23(a)(4) ............................................................................. 18

FED. R. CIV. P. 23(b)(3) ........................................................................ 19, 27

## TREATISES

6 H. NEWBERG & A. CONTE, NEWBERG ON CLASS ACTIONS § 21:30 (4th ed. 2003).................. 29

NEWBERG ON CLASS ACTIONS, § 4:51 (5th Ed. 2019) ................................................ 20

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

## LOCAL RULE 7-1 CERTIFICATION

On April 29, 2022, counsel for Plaintiff and Defendants conferred by telephone about the relief sought in this motion. Plaintiff certifies that despite the parties' good-faith efforts, they were unable to resolve their differences, necessitating this Motion for Class Certification.

## MOTION FOR CLASS CERTIFICATION

Pursuant to FED. R. CIV. P. 23, Plaintiff Richard L. Smith, Jr. ("Plaintiff" or "Smith") moves this Court for an order certifying two multi-state classes consisting of consumers in Oregon, Georgia, Maryland, and North Carolina who made payments on void, illegal loans that were part of Defendants' predatory lending enterprise:

### The RICO Class
All persons: (1) who executed a loan with Red Rock or Big Picture Loans, (2) while residents of Oregon, Georgia, Maryland, or North Carolina, and (3) where the loan was originated and/or any payment was made on or after October 31, 2014.

### The Unjust Enrichment Class
All persons: (1) who executed a loan with Red Rock or Big Picture Loans, (2) while residents of Oregon, Georgia, Maryland, or North Carolina, and (3) where the loan was originated and/or any payment was made on or after October 31, 2015.

In the alternative, if the Court finds that Oregon law may not be uniformly applied to the claims of the proposed Classes, Plaintiff proposes that the Court certify a Subclass of Oregon residents:

### The Oregon Subclass
All persons: (1) who executed a loan with Red Rock or Big Picture Loans, (2) while residents of Oregon, (3) where the loan was originated and/or any payment was made on or after October 31, 2014.[1]

This motion is based on the memorandum below, the Declaration of American Legal Claim Service, LLC ("ALCS Decl."), the Declaration of Richard Smith ("Smith Decl."), the Declaration

---

[1] Excluded from the Classes and the Oregon Subclass are any employees, officers, or directors of Defendants, any attorneys appearing in this case, and any judges assigned to hear this case as well as their immediate family and staff.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

of Michael A. Caddell ("Caddell Decl."), the Declaration of Steve D. Larson ("Larson Decl."), and the referenced exhibits filed with this Motion. Plaintiff further requests that the Court appoint Plaintiff's counsel of record as class counsel and appoint Plaintiff as class representative.

## I. INTRODUCTION

This case involves an illegal tribal lending enterprise created and operated by Martorello—a Chicago entrepreneur with no lineage to the Lac Vieux Desert Band of Lake Superior Chippewa Indians ("the Tribe"). Over the past nine years, Martorello and his company, Eventide Credit Acquisitions, LLC ("Eventide") made and collected on high-interest loans to consumers originated in the name of Red Rock Tribal Lending, LLC ("Red Rock") and Big Picture Loans, LLC ("Big Picture")—two entities organized under the Tribe's laws. Despite nominal Tribal involvement, Defendants controlled the lending businesses and received the vast majority of the profits (94-98% of the gross profits). Martorello has personally pocketed tens of millions of dollars as a result of his role in this scheme:

| State | Number of loans made to Class members[2] | Number of unique Class members | Amount of principal and/or interest paid by Class members |
|---|---|---|---|
| Oregon | 7,184 | 4,663 | $10,560,851.06 |
| Georgia | 51,527 | 31,596 | $78,901,625.98 |
| Maryland | 25,895 | 16,104 | $42,734,884.14 |

---

[2] These numbers include all members of the proposed RICO Class and Oregon Subclass through December 20, 2019, the date of preliminary approval of the national settlement with the Tribe-affiliated entities. For a one-year shorter period, similar numbers are available for the Unjust Enrichment Class.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

| State | Number of loans made to Class members[2] | Number of unique Class members | Amount of principal and/or interest paid by Class members |
|-------|------------------------------------------|-------------------------------|-----------------------------------------------------------|
| North Carolina | 26,174 | 15,938 | $37,051,221.60 |

ALCS Decl., ¶¶ 5, 7.

The enterprise made loans with annual percentage rates in the range of 300 to 700%, *i.e.*, greatly in excess of the Oregon interest rate cap. *See, e.g.*, ORS §§ 82.010, 725.045, and 725.340(1).[3] For making the unlicensed, usurious loans, the Defendants' loans are void and unenforceable, and the Defendants and related third parties may not collect, obtain, or receive any principal or interest on the loans. ORS §§ 82.010(4), 725.045(1).[4] Because there is no material difference between applicable Oregon law and the laws of Georgia, Maryland, and North Carolina, this Court may apply Oregon law to the Class's claims. *See In re Packaged Seafood Prod. Antitrust Litig.*, 332 F.R.D. 308, 337 (S.D. Cal. 2019), *aff'd sub nom. Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (granting motion for certification of multi-state class where "[b]ased on the facts before it, the Court finds that 'the record does not support a conclusion that the outcome in [the other] jurisdictions would be materially different under local

---

[3] Regarding interest rate caps, as with all material provisions applicable to the Class members' claims, there is no material difference between Oregon law and that of Georgia, Maryland, and North Carolina. *See* GA. CODE ANN. §§ 7-3-5, 7-3-6, 7-3-8 (forbidding small-dollar loans at rates in excess of 8%); MD. CODE, COM. LAW §§ 12-302, 12-306 (forbidding consumer loans in excess of 33%); N.C. GEN. STAT. § 24-1.1(c) (forbidding small consumer loans at rates greater than 16%).

[4] Again, regarding the prohibition against collecting any principal or interest on unlicensed loans, there is no material difference between Oregon law and the law of Georgia, Maryland, and North Carolina. *See* GA. CODE ANN. § 7-3-29(a); MD. CODE, COM. LAW §§ 12-14, 12-314; N.C. GEN. STAT. § 53-166(c).

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

law than under California law'") . This class action seeks to recover all amounts paid on these

illegal loans for violations of state law for the benefit of the Classes.

In addition to the violations of state usury law, Defendants' conduct violated the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), a statute enacted with the "principal aim" of

eliminating "loansharking." *United States v. Biasucci*, 786 F.2d 504, 512 (2d Cir. 1986) (citing

S.Rep. No. 617, 90th Cong., 2d Sess. 78–80; H.R.Rep. No. 1574, 90th Cong., 2d Sess. 5). To

achieve this goal, RICO prohibits both the participation in an enterprise involved in the collection

of and the conspiracy to collect "unlawful debt," 18 U.S.C. § 1962(c)-(d), which RICO defines as

a debt incurred where the usurious rate "is at least twice the enforceable rate" under state or federal

law. 18 U.S.C. § 1961(6). As a participant (and the primary beneficiary) of this contemporary

loansharking enterprise, Defendants are jointly and severally liable to Plaintiff and the Class

members for the collection of the unlawful debt.[5]

This case is particularly appropriate for class certification due to Defendants' uniform

practice of evading state usury laws. Based on analysis of the same operative facts, the Eastern

District of Virginia granted certification of a class of Virginia borrowers. *Williams v. Big Picture*

*Loans, LLC*, 339 F.R.D. 46 (E.D. Va 2021) (appeal pending) (granting class certification on the

same operative facts); *Williams v. Big Picture Loans, LLC*, No. 3:17-cv-461, 2021 WL 2930976,

*7 (E.D. Va. July 12, 2021) (in the context of class certification, holding that the class action

waiver provision of the subject loan agreement is unenforceable). Indeed, Courts routinely grant

class certification in similar usury cases. *See, e.g.*, *MacDonald v. Cashcall, Inc.*, 333 F.R.D. 331

---

[5] *See, e.g., States v. Philip Morris USA*, 316 F. Supp. 2d 19, 27 (D.D.C. 2004) ("Every circuit in
the country that has addressed the issue has concluded that the nature of both civil and criminal
RICO offenses requires imposition of joint and several liability because all defendants participate
in the enterprise responsible for the RICO violations.").

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

(D.N.J. 2019) (granting class certification and certifying both usury and RICO claims in a comparable tribal lending case); *Inetianbor v. CashCall, Inc.*, No. 13-cv-60066-JIC, Dkt. 284 (S.D. Fla. Sept. 19, 2016) (granting class certification in a case alleging violations of Florida's usury laws), attached as Exhibit 1; *Henry v. Cash Today, Inc.*, 199 F.R.D. 566 (S.D. Tex. 2000) (granting class certification in a case alleging, *inter alia*, the defendant's usurious loans violated RICO and state usury laws); *Upshaw v. Georgia (GA) Catalog Sales, Inc.,* 206 F.R.D. 694 (M.D. Ga. 2002) (granting class certification in a case alleging a company and its principal violated RICO and Georgia's usury laws). The Court should therefore grant Plaintiff's Motion for Class Certification.

## II. STATEMENT OF FACTS

Plaintiff here provides an overview of Defendants' creation and control of the predatory lending scheme, which is addressed in detail in Plaintiff's First Amended Class Action Complaint with accompanying 37 exhibits. Dkts. 100 to 100-3; *see also* Dkt. 146 at 4-11; Dkt. 156 at 2-3; Dkt. 165 at 2-3; Dkt. 170 at 2-3 (discussing Plaintiff's allegations and denying repeated motions to dismiss). "For purposes of ruling on a motion to certify a class, the court takes the substantive allegations of the complaint as true." *Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. 307, 313 (D. Or. 2017) (*citing In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig*., 691 F.2d 1335, 1342 (9th Cir. 1982)); *see also Wakefield v. ViSalus, Inc.,* No. 3:15-cv-01857-BR, 2017 WL 11510073, *1 (D. Or. June 23, 2017) (basing class certification analysis on facts as pled in the complaint).

### A. The Tribal Lending Enterprise was Created in an Attempt to Evade State Usury Laws.

Martorello began exploring the tribe-affiliated lending model in 2011. It was proposed that two entities be involved in the lending enterprise, a servicing company owned by Martorello and a Tribe-affiliated lender, Red Rock. Martorello's entity would be "the servicer for the lending

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

operation," and the Tribe-affiliated company would not be "involved in the business." Dkt. 100-1 at 28. Although the Tribe-affiliated business would have nominal managers, Martorello's company, Bellicose VI, LLC ("Bellicose") (and later, Sourcepoint VI, LLC), would "operate[] the business completely." *Id.* at 22. As Joette Pete, the former Vice Chairwoman of the Tribe, explained: "It was understood that Martorello's company would handle everything, including underwriting, marketing, servicing, funding, and collection of the loans." Dkt. 100-1 at 15 at ¶ 3.

### B. The Initial Contract with Red Rock Provided Martorello with Complete Control Over the Business, as well as Virtually All Profits.

In October 2011, Martorello's company, Bellicose, executed an agreement that provided Martorello with almost exclusive control over Red Rock's operations; Martorello subsequently transferred management of the lending business to his company, Sourcepoint VI, LLC. *See generally,* Dkt. 100-1 at 31. Although the Tribe's co-managers held titles supposedly giving them a voice in Red Rock's lending operation, the co-managers actually played a "rather meaningless role" with limited involvement in or knowledge about the lending enterprise. *Williams v. Big Picture Loans, LLC*, No. 3:17-cv-00461, 2020 WL 6784352, at *5 (E.D. Va. Nov. 18, 2020). In exchange for running virtually all aspects of the business, Martorello and his companies received 98% of the net profit collected on the loans. Dkt. 100-1 at 38.

### C. Regulators Immediately Put Martorello on Notice that He was Violating State Law.

As early as December 2012—a little over a year into the business—Martorello posed "urgent questions" to a business expert about how to value businesses, that were "illegal, yet very profitable," like online poker sites, medical marijuana stores, and "a drug cartel." Dkt. 100-1 at 80. Martorello explained that they had already "received dozens of letters from State AGs saying we need to be licensed and sending Cease and Desist orders." *Id*. at 81. In Martorello's view, there was "no business with such risk to it" as the tribal lending model. *Id*. In addition to this risk,

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

Martorello further explained that Greenberg Traurig provided him with a 20-page legal opinion, concluding that Martorello could be liable "for aiding and abetting felony crime" in states like Georgia. *Id.*

The biggest threat to Martorello's illegal lending enterprise came when the New York Department of Financial Services ("NY DFS") issued a cease and desist to 35 online lending companies, including Red Rock.[6] The NY DFS also sent letters to 117 banks and the National Automated Clearinghouse Association, requesting that "they work with DFS to cut off access to New York customer accounts for illegal payday lenders." *Id.* In unsuccessful litigation brought to enjoin the DFS enforcement action, the court found that Red Rock was "subject to the State's non-discriminatory anti-usury laws" because the "undisputed facts demonstrate[d]" that the illegal activity was "taking place in New York, off of the Tribes' lands." *Otoe-Missouria Tribe v. N.Y. Dep't of Fin. Servs.*, 974 F. Supp. 2d 353, 361 (S.D.N.Y. Sept. 2013).

### D.  Martorello Pushed for Re-Branding of Red Rock to Big Picture Loans.

Two weeks after the district court's decision, Martorello began to plan for a re-structure of the lending operation. In an e-mail dated October 14, 2013, Martorello proposed that Bellicose would "[a]ssign today LVD 51% of Bellicose via Equity only membership interest," but Martorello would retain 100% of the profits for four years." Dkt. 100-2 at 19. Martorello's e-mail candidly explained that the transaction must be "structured to provide all entities sovereign immunity." *Id.* With the re-structuring in progress, Martorello proposed that Red Rock "needs a rebrand" because it "ha[d] been blacklisted and rolled through the mud in the press" following the

---

[6] *See*, *e.g.*, The Official Website of New York State, Press Room, *Cuomo Administration Demands 35 Companies Cease and Desist Offering Illegal Online Payday Loans That Harm New York Consumers* (Aug. 6, 2013), *available at* https://www.governor.ny.gov/news/cuomo-administration-demands-35-companies-cease-and-desist-offering-illegal-online-payday-loans.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

*Otoe-Missouria* decision. Dkt. 100-2 at 45. Soon thereafter, Martorello noted that he had a "really great brand" known as Big Picture Loans. Dkt. 100-2 at 49. "[T]he record shows convincingly that Martorello was the driving force in the creation of Big Picture and Ascension, just as he was in the creation of Red Rock" (*Williams*, 2020 WL 6784352 at *12), and "except for a few cosmetic changes (or 'optics' as Martorello described them), the LVD lending operation by way of Big Picture continued as it had under the Red Rock structure." *Id.* at *8.

### E. Martorello Formed Eventide to Maintain Control of the Lending Enterprise.

On February 9, 2015, Martorello created a new company, Eventide, to facilitate the continuation of the illegal lending enterprise. Martorello engineered superficial changes to the structure of the operation—characterizing his interest as a $300 million debt rather than equity— in a vain attempt to avoid accountability for blatant violations of state and federal lending laws while maintaining the "status quo" of his oversight and control of the illegal scheme.

In an e-mail dated August 26, 2014, Martorello insisted that the servicing company, which he would control through Eventide, "will have to keep a final say so in business decisions to protect the business from being destroyed by the new owner before paid." Dkt. 100-3 at 71. And, Martorello made clear he did not want any changes, explaining there was "[n]o need to reinvent the wheel or shake things up, just need to keep it alive and then use the earnings from it to take risks with and do other things." *Id.*

Similarly, Martorello insisted that "the Bellicose Companies will be sold only 'as is', with existing Management in place and the company remaining substantially the same." Dkt. 100-3 at 78. Martorello insisted on formal control, saying it was "take it or leave it[.]" Dkt. 100-3 at 82. Martorello further wrote "[a]s far as I know, the Manager[s]," *i.e.*, Hazen and Chairman Williams, "don't really do anything." Dkt. 100-1 at 71. In closing, Martorello explained that if Managers are

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

really only involved per the [operating agreement] to get feedback from the CEO/President" then that seemed "OK." *Id.*

In a detailed review of this record, the Eastern District of Virginia found, "The record is thus clear beyond serious question that Martorello was motivated to sell Bellicose to [the Tribe] because of the threats of litigation and enforcement actions against him and his entities under the then-current lending arrangement between him, his entities, and [the Tribe]." *Williams*, 2020 WL 6784352, at *11.

**F.  The Restructuring Documents Ensured Martorello's Control.**

The lending enterprise completed the merger on January 26, 2016. On paper, the Tribe now appeared to own the business. However, as designed by Martorello, the Tribe contractually relinquished any right to control the business.

*First*, the Tribe contractually relinquished any right to control Ascension through the Delegation of Authority Policy, which gives Martorello's friend, Brian McFadden, the right to control Ascension's strategy, bank accounts, employee benefits, and "all matters necessary for the day to day management of Ascension." Dkt. 100-3 at 133. Furthermore, to replace McFadden, Tribal representatives were required to receive the approval of Eventide, *i.e.*, Martorello. Dkt. 100-3 at 160.

*Second*, Ascension and Big Picture entered into a "Intratribal Servicing Agreement," which is virtually identical to the prior servicing agreement between SourcePoint and Red Rock. Compare Dkt. 100-3 at 87 to 100-1 at 31. The Tribe cannot amend, modify, or terminate the Intratribal Servicing Agreement until satisfaction of the $300 million-dollar promissory note.[7]

---

[7] If TED breaches the Intratribal Servicing Agreement, it would forfeit the reinvestment amounts, as well as its ownership interest in Ascension. Dkt. 100-3 at 42, Secured Promissory Note at § 1.2(b)(2).

Furthermore, if Martorello disagrees with any action by McFadden, Martorello has the sole discretion to revoke his profit interest as a shareholder of Eventide. In short, even after the sale, Martorello continued to control the business. Denying Martorello's motion to dismiss, Judge Simon succinctly summarized the relationship between Martorello, Eventide, and the Tribe-affiliated lender:

> The Tribe purchased Ascension from Martorello with a $300 million promissory note issued to Defendant Eventide, even though Ascension appears to be worth only a small fraction of that amount. Martorello created Eventide shortly before the Tribe acquired Ascension, and Martorello continues to control and largely own Eventide. The promissory note provides Eventide with leverage over Ascension and therefore over Big Picture. Eventide retains significant authority to decide who leads Ascension (Ascension's manager is a close associate of Martorello), set lending policies and block changes in interest rates that Ascension charges for Big Picture's loans to the putative class members, and even decide in which jurisdiction Ascension markets Big Picture's lending services. Eventide receives the bulk of Big Picture's revenues, while the Tribal entities receive no more than six percent of revenues. Also according to Smith, most of Big Picture's and Ascension's employees work in the Philippines, Mexico, the Virgin Islands, or Puerto Rico. The few Tribal members whom Big Picture employs are paid only minimum wages and perform only menial or administrative tasks.

*Smith v. Martorello*, No. 3:18-cv-1651-AC, 2021 WL 981491, at *2 (D. Or. Mar. 16, 2021).

Likewise, the District of Massachusetts recently found that Plaintiff's allegations show that Martorello was the "mastermind" behind the Big Picture enterprise:

> [T]he plaintiff's allegations demonstrate that Martorello was the mastermind and driving force behind the creation and implementation of the alleged rent-a-tribe lending scheme, including the creation of Big Picture Loans and the restructuring of Bellicose as Ascension. They also demonstrate that Martorello took affirmative steps to organize the business in a manner that would hide his involvement from state regulators and others while enabling him to receive the vast majority of the net revenue derived from the lending operations. Moreover, the record reveals that Martorello, through Eventide and Ascension, directed and maintained control over all material aspects of the lending operations, including but not limited to, the marketing, extension and collection of payday loans to thousands of consumers….

*Duggan v. Martorello*, No. 18-12277-JGD, ___ F. Supp. 3d ___, 2022 WL 952183, *11 (D. Mass.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

March 30, 2022 (internal citations omitted).

### G. Plaintiff Richard Smith Paid Principal and Interest at Usurious Rates as A Result of Defendants' Predatory Lending Scheme.

Applying for his loan from his home in Banks, Oregon on December 11, 2017, Plaintiff received a $1,500 loan online from Big Picture at 527% interest. Smith Decl., ¶¶ 3-5; Dkt. 100-1 at 3, Loan Agreement. Plaintiff received the funds at his bank in Oregon and repaid the loan with electronic withdrawals from the bank. Smith Decl., ¶¶ 6, 8-9. Repaying the loan early after just *four months*, Plaintiff paid *$4,353.69* in principal and interest in repayment of the *$1,500* loan. *Id.* at ¶ 8; ALCS Decl. at ¶ 6.

### III. ARGUMENT

### A. The Court Should Certify the Class.

Class actions allow a plaintiff to "vindicate[] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338, 100 S. Ct. 1166 (1980). This case must be brought as a class action because the damages for each of the Class members are small compared to the cost of litigation. The requirements of FED. R. CIV. P. 23 ("Rule 23") are well known: numerosity, commonality, typicality, adequacy, and satisfaction of the requirements for one of the class types defined in Rule 23(b). *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011). In this dispute about Defendants' illegal gains from a predatory lending enterprise, Plaintiff has met all the requirements to certify the Class.

### 1. The Class Is Ascertainable and So Numerous that Joinder Is Impracticable.

To satisfy the numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23 (a)(1). "[T]he court must find that the difficulty or inconvenience of joining all members of the class makes class litigation desirable."

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

*Carlin v. DairyAmerica, Inc*., 328 F.R.D. 393, 399 (E.D. Cal. 2018) (citation omitted). No specific numerical threshold is required; instead, the law "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. v. E.E.O.C*., 446 U.S. 318, 330 (1980).

Here, class membership is also readily ascertainable as the definition is based entirely on objective criteria and class members are identifiable through electronic data analysis. Identification of the class members involves a handful of discrete steps: (1) determining whether a consumer had a loan with Big Picture and/or Red Rock, (2) for all such consumers, determining whether they had an address in one of the subject states, and (3) identifying any payments made by those consumers after October 31, 2014. The answers to these questions were and are readily ascertainable through loan records that the Tribe has provided to a claims administration service, and as noted in the *Williams* class certification opinion, the information has been successfully used in connection with the national class action settlement of *Galloway v. Williams*, No. 3:19-cv-00470-REP, Dkt. 108-1 (E.D. Va. Dec. 1, 2020) ("*Galloway III*"). *Williams*, 339 F.R.D. at 56.

Based on objective criteria, the numerosity requirement is easily met. For the Class and Oregon Subclass members who made loans payments between October 31, 2014 and December 20, 2019, they were noticed and participated in the separate settlement with the Tribal defendants in *Galloway III*. Based on an analysis of that data by American Legal Claims Services, LLC for available data from October 31, 2014 through December 20, 2019, the Class is comprised of 68,301 borrowers who paid $169,248,582.78 in principal and interest on loans within that time period; similarly, the Oregon Subclass is comprised of 4,663 borrowers who paid $10,560,851.06 in principal and interest on their loans during that same period. ALCS Decl. at ¶¶ 5, 7. Accordingly, Rule 23(a)(1)'s numerosity prerequisite is satisfied. *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 188 F.R.D. 365, 372-73 (D. Or. 1998).

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

### 2.    There Are Common Questions of Law or Fact.

Rule 23(a)(2) requires the court to find that there are questions of law or fact common to the class, but complete congruence of those questions is not necessary. For commonality, "[w]hat matters to class certification… is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541 (2011) (italics in original). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart,* 564 U.S. at 359 (citation and formatting omitted).

In this instance, all liability questions of fact and law are entirely common. The claims asserted by Plaintiff and the class members originate from the same conduct, practice, and procedure on the part of Defendants, namely the use of the tribal lending scheme in an attempt to evade state interest rate laws. This lending enterprise used a uniform pricing structure when issuing loans that universally resulted in each class member receiving a loan with a grossly illegal interest rate. Based on these facts, Plaintiff and the Class members share a number of common questions of law that can all be decided with common proof, including: (1) whether their interest rates violate state usury law; (2) whether the choice-of-law provision in their loan agreements bars enforcement of state usury law; (3) whether the relationship between the various participants constitutes an enterprise as defined under RICO; (4) whether Defendants participated or operated in the management of the enterprise; (5) whether Defendants had knowledge of and agreed to the overall objective of the enterprise; and (6) whether the amounts paid by each consumer are recoverable against Defendants.

The U.S. District Court for the Eastern District of Virginia found that the same operative

facts provided compelling grounds favoring class certification:

> There is substantial (and largely unrebutted) evidence that, throughout the relevant class periods, Martorello had de facto control of Red Rock and Big Picture's lending operations. To begin, there is unrebutted evidence that Martorello was both highly instrumental and heavily involved in the [Tribe's] entrance into the business of payday lending. And, contrary to what the [Tribe] and Martorello previously represented, there is proof that Martorello was functionally in charge of the lending business and the Tribal 'managers' were 'rather meaningless.' And, even after the [Tribe] restructured the lending operations to avoid regulatory scrutiny, the evidence strongly shows that Martorello was still running the show. ('Efforts were made to create the appearance of the Tribe's involvement but the Tribe had no substantive involvement.'). '[E]xcept for a few cosmetic changes ..., the [Tribal] lending operation by way of Big Picture continued as it had under the Red Rock structure.'

*Williams*, 339 F.R.D. at 54 (internal citations omitted). "On the current record, no credence can be given to Martorello's [anticipated] arguments challenging class certification on the ground that, because of his changing roles, Plaintiffs' claims will not be susceptible to class-wide proof." *Id.* at 54-55.

Courts have found common questions in cases based on similar factual allegations and legal claims. This includes certification of classes in cases alleging that the defendants used a subterfuge, such as a purported tribal lender, to conceal the fact that they were making unlawful loans. For example, in *Inetianbor v. CashCall, Inc.*, a case involving a similar rent-a-tribe scheme, the court found that:

> The proposed class's claims share multiple questions of law and fact. For example, it is a common question of fact whether CashCall improperly used Western Sky as a "front" for its lending business, invoking Tribal law in an attempt to shield the enterprise from State regulation and consumer laws. Additionally, all class members entered into loan agreements with materially similar terms; therefore, whether the loan contracts are void for charging usurious interest rates is a legal question common to all or nearly all members of the class. Further, whether the loans violated Florida lending and consumer protection law and whether Reddam can be held personally liable are legal questions common to the class.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

No. 13-cv-60066-JIC, Dkt. 284, at 17–18 (provided with Attachment A). The facts in this case are comparable to those in *Inetianbor* and similarly warrant a finding of commonality. Another court has also recently held:

> As to each class, the questions of whether Defendants charged interest at rates in excess of those permitted by New Jersey law will be common, as will questions of whether Defendants and Western Sky together formed an enterprise sufficient for liability under RICO.

*MacDonald*, 333 F.R.D. at 343.[8] Because there are multiple common questions of law and fact, commonality is easily satisfied.

### 3. The Claims of the Proposed Class Representatives Are Typical.

Typicality is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The typicality test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). Under Rule 23's permissive standards, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1041-42 (9th Cir. 2012),

---

[8] Other decisions involving non-tribal usurious loans are in accord. *See, e.g.*, *Purdie v. Ace Cash Express*, 2003 WL 22976611, at *3 (N.D. Tex. Dec. 11, 2003) ("Here, the members of the putative class share a common factual circumstances of having obtained payday loans that were originated, serviced and collected in a uniform manner according to policies and procedures implemented by Defendants on a nationwide basis."); *Upshaw*, 206 F.R.D. at 699 (M.D. Ga. 2002). As to the commonality element, *Upshaw* identified "numerous common issues," including, among others, "[w]hether the interest charged on the loans violates the Georgia usury laws" and "[w]hether the loans and interest are unlawful debts, the collection of which violates RICO." 206 F.R.D. at 699; *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 155 (S.D.N.Y. 2017). (finding commonality in a case alleging violations of New York's usury laws based on the "common injury" of "the attempted collection of interest at a usurious rate").

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

*cert. denied*, 569 U.S. 975 (2013). In examining typicality, the Court considers "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Costelo v. Chertoff*, 258 F.R.D. 600, 608 (C.D. Cal. 2009). Like commonality, typicality is a "permissive" standard and "the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Id*. Typicality focuses on "the nature of the claim . . . of the class representative, and not . . . the specific facts from which it arose." *Ellis*, 657 F.3d at 984 (quoting omitted). Minor variations in circumstances do not defeat typicality.[9]

Plaintiff's claims satisfy the typicality requirement of Rule 23. Here, Plaintiff asserts a uniform practice of charging usurious loans to consumers using the now-rejected rent-a-tribe model. RICO defines "unlawful debt" as a debt incurred in connection where the usurious rate "is at least twice the enforceable rate" under state or federal law. 18 U.S.C. § 1961(6). In other words, § 1962(c) "encompasses efforts to collect on a usurious loan" such as the predatory loans made to Plaintiff and class members in this case. *See Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 148 (3d Cir. 2016). Plaintiff and the class members are all in the same boat; they were all subject of the making and collection of the usurious loans, and the only genuine difference from one member to another is the level of financial harm incurred. *See O'Donovan v. CashCall, Inc.*, 278 F.R.D.

---

[9] *Parsons*, 754 F.3d at 685 ("We do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." (quoting *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001)); *see also Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1142 (9th Cir. 2016) (A class representative satisfies typicality when his "personal narrative is somewhat more colorful" than other class members' experiences, as long as his claim "falls within the common contours of" the class-wide theory of liability).).

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

479, 491-92 (N.D. Cal. 2011) ("to the extent that Plaintiffs' claims stem from the same underlying conduct by CashCall—namely, the terms of the loan agreements and CashCall's subsequent collection practices—there is a sufficient nexus between Plaintiffs' claims and those of the putative class members" to satisfy typicality); *Kay v. Wells Fargo & Co.*, 247 F.R.D. 572, 578 (N.D. Cal. 2007) (typicality requirement met where claim "arises out of the same business practices").

Again, *Inetianbor* is instructive. There, the court found that the plaintiffs' claims, based on usurious loans, were "typical of those of the proposed class" because the plaintiffs all "entered into Western Sky loan agreements with materially similar terms, including interest rates that allegedly exceeded the allowable rate under Florida law," and "all members of the proposed class may allege similar damages as a result of Defendants' actions." *Inetianbor*, at 19. Similarly, another court has explained "[t]ypicality is inherent in the class definition because each member entered into the same type of transaction, a payday loan, with Defendants and his/her claims arose from the same practices of Defendants." *Henry*, 199 F.R.D. at 571-72; *see also MacDonald*, 333 F.R.D. at 343 ("Plaintiffs have shown that their claims are legally identical to those of the class, as they obtained loans from Western Sky at allegedly usurious interest rates, under loan agreements purporting to be governed exclusively by [tribal] law. These are precisely the theories and claims under which each class seeks to recover.").

Like *Inetianbor* and *MacDonald*, Plaintiff's claims for usury violations are typical of those of the proposed Class. If Plaintiff proves that Defendants violated Oregon's usury laws by the unlicensed lending and receipt of usurious interest payments, he will advance the claims of all of the proposed Class members to the same degree.

    **4.**    **The Proposed Class Representatives Will Adequately Represent the Class.**

Rule 23(a)(4) requires that the named plaintiff and his or her counsel must "fairly and

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Legal adequacy turns on two questions: (1) whether the class representative's interests are common with, and not antagonistic to, the class's interests; and (2) whether the class representative is "able to prosecute the action vigorously through qualified counsel." *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, 2006 WL 2642528, at \*7 (N.D. Cal. Sept. 14, 2006) (*citing Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). Both are satisfied here.

First, no conflict exists between Plaintiff and absent class members. Plaintiff's interests and those of members of the proposed classes are fully aligned. Plaintiff shares the Class interest in obtaining a determination that Defendants violated § 1962(c) of RICO through management and participation in the affairs of an enterprise involved in the "collection of unlawful debt," that Defendants further violated § 1962(d) of RICO by entering into a series of agreements to violate § 1962(c), that the loans made to Oregon, Georgia, Maryland, and North Carolina consumers used an interest rate grossly in excess of what is legal under applicable state law, and that the loan agreements are inapplicable or unenforceable as to the class claims. Further, Plaintiff and the proposed class members share identical interests in establishing Defendants' liability for their role in the scheme. Additionally, Plaintiff has vigorously prosecuted this case, participated as a member of the creditors' committee in the Eventide bankruptcy, answered discovery, provided deposition testimony, and participated in a settlement against the other participants involved. Plaintiff has assisted and cooperated from the beginning to benefit all consumers similarly situated and has turned down individual settlement offers that would not have advanced the class interests. Additionally, Plaintiff has hired attorneys who have significant experience in representing the class interests. Caddell Decl.; Larson Decl. Proposed Class Counsel has identified and investigated potential claims in the case, has sufficient knowledge of the applicable

Page 18    PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

law, and has committed financial resources to the pursuit of this case. Plaintiff's counsel are ready

and able to continue to prosecute this case if appointed class counsel.

**B.  Questions of Law or Fact Common to the Class Predominate.**

Certification pursuant to Rule 23(b)(3) "is appropriate whenever the actual interests of the

parties can be served best by settling their differences in a single action." *Hanlon v. Chrysler Corp.*,

150 F.3d 1011, 1022 (9th Cir. 1998) *overruled on other grounds by Wal-Mart*, 564 U.S. 338

(citations and quotation marks omitted). A plaintiff must show 'that the questions of law or fact

common to class members predominate over any questions affecting only individual members.'"

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (quoting FED. R. CIV. P.

23(b)(3)). Certification under Rule 23(b)(3) requires that "questions of law or fact common to class

members predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1002 (9th Cir. 2018) (citation

omitted). "[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship between

the common and individual issues in the case, and tests whether the proposed class is sufficiently

cohesive to warrant adjudication by representation."[10]

**1.  Common Issues About the Underlying Allegations Predominate.**

"Considering whether questions of law or fact common to class members predominate

begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc.*

*v. Halliburton Co.*, 563 U.S. 804, 809, 131 S.Ct. 2179 (2011) (internal quotation marks omitted).

---

[10] *Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 964 (9th Cir. 2013), *cert. denied*, 574 U.S. 815 (2014) (citation and internal quotation marks omitted); *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 459, 133 S. Ct. 1184 (2013) ("Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.") (emphasis in original).

Page 19    PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

The predominance analysis is a pragmatic one: it is not a numerical analysis and instead is a qualitative assessment of overriding issues in the case, despite the existence of individual questions.[11] Common issues clearly predominate. The common set of legal and factual questions involve (1) whether their interest rates violate state usury laws; (2) whether the choice-of-law and/or class action waiver provisions in the form loan agreements apply to Defendants and bar enforcement of state usury laws on a class basis; (3) whether the relationship between Defendants and other participants constitutes an enterprise as defined under RICO; (4) whether Defendants participated or operated in the management of the enterprise; (5) whether Defendants had knowledge of and agreed to the overall objective of the enterprise; and (6) whether the amounts paid by each consumer are recoverable against Defendants. These common questions warrant resolution of the case on a class basis. *Williams*, 339 F.R.D. at 58, 61-63. These questions are ones "where the same evidence will be sufficient for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 136 S.Ct. 1036 (2016) (internal quotations omitted).

Plaintiff's claims are based on standardized conduct by Defendants toward him and fellow Class members: namely, using a baseless claim that Native American Tribal law can somehow be applied to conduct outside any reservation in an attempt to evade state law in order to issue and collect on usurious loans. As the court found in *Inetianbor*, common issues predominate in rent-a-tribe schemes for usurious loans because of "the standardized nature of the loan transactions and the uniform manner in which defendants made, processed and collected on the loans," such that

---

[11] *See* NEWBERG ON CLASS ACTIONS, § 4:51 (5th Ed. 2019); *Azar v. Blount Int'l Inc.*, No. 3:16-cv-0483-SI, 2019 WL 7372658, at *6 (D. Or. Dec. 31, 2019); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013), *cert. denied*, 571 U.S. 1196 (2014).

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

"few variations exist in the claims and the legal claims and theories asserted."[12] Defendants'

conduct was not only substantially the same as to all members of the classes, but there are also no

material individual defenses to Plaintiff's usury and RICO claims. *Henry*, 199 F.R.D. at 572

("[T]he common questions are whether Defendants were engaged in racketeering activity or

collecting an unlawful debt, whether an enterprise exists, and whether defendants conducted or

participated in an enterprise. *No reliance or causation need be shown*….") (emphasis added).

Finally, this case is also similar to other cases where a defendant's lending practices or

other financial misconduct predominates because the defendant's uniform treatment of the

plaintiffs caused them harm. As one court explained:

> Given the standardized nature of the payday loan transactions and the uniform
> manner in which Defendants made, processed and collected on the loans, and that
> few variations exist in the claims or the factual bases underlying the claims and the
> legal claims and theories asserted, the court finds that the factual and legal issues
> in this case would be subject to generalized proof applicable to the entire class, and
> that such issues predominate over any issue that may be subject only to
> individualized proof.

*Purdie*, 2003 WL 22976611, at *4. Like the plaintiffs in *Purdie* and similar cases, Plaintiff and the

classes have been subjected to the same usurious lending practices by Defendants and the other

enterprise participants, and therefore, common issues predominate.[13]

---

[12] *Inetianbor*, at 21; *see also Purdie*, 2003 WL 22976611, at *4 (finding predominance in a payday lending case based on standardized loan transactions); *Upshaw*, 203 F.R.D. at 700-01 (finding predominance in a payday lending case because "Defendants' conduct was substantially the same with respect to all members of the class," and "[t]his conduct gives rise to Plaintiffs' class-wide liability claims for violation of the Georgia usury laws and RICO").

[13] *See also Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 579 (M.D. Fla. 2006) (finding that common issues predominated with respect to claims under the Truth in Lending Act, Finance Act, FDUPTA, and unjust enrichment based on defendant's "deceptive acts common to the purported class"); *Spinelli v. Capital One Bank*, 265 F.R.D. 598, 610 (M.D. Fla. 2009) (adopting report and recommendation to certify class claims alleging sale of deceptive credit protection product); *see also Madden*, 237 F. Supp. 3d at 160–61 (finding predominance in a case based on violations of New York's usury laws).

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

### 2.  The Court May Apply Oregon Law Uniformly to the Class's Claims.

No material variations in state law exist here that might defeat predominance. *See In re Packaged Seafood Prods. Antitrust Litig.*, 332 F.R.D. at 336 (noting that "[i]n a multi-state class action, the Court must consider the choice-of-law issues because 'variations in state law may swamp any common issues and defeat predominance'"). "A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Zinser v. Accufix Research. Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001). "Under Oregon choice-of-law rules the Court must determine as a threshold issue whether there is a material difference between Oregon law and the law of the other forum." *Powell v. Sys. Transp., Inc.*, 83 F. Supp. 3d 1016, 1022 (D. Or. 2015).

Here, Defendants cannot meet their burden to show that any material difference exists. *See Id.* ("It is the burden of the party advocating the application of a different jurisdiction's law to identify material differences between that jurisdiction's law and Oregon's ….") Georgia, Maryland, and North Carolina, like Oregon, forbid unlicensed consumer loans and forbid the collection of any principal or interest payments on illegal loans. *See* GA. CODE ANN. § 7-3-29(a); MD. CODE, COM. LAW §§ 12-14, 12-314; N.C. GEN. STAT. § 53-166(c). This Court should accordingly apply Oregon law to the Class's claims. *See Powell*, 83 F. Supp. 3d at 1022 (holding that "the Oregon courts will apply Oregon law if no party identifies any material distinctions, without regard to whether such distinctions in fact exist"). Because Oregon law applies, no variations in state law weigh against predominance, and the Court should therefore certify the multi-state Class.[14]

---

[14] *In re Packaged Seafood Prod. Antitrust Litig.*, 332 F.R.D. at 337, *aff'd sub nom. Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (granting motion for certification of multi-state class where "[b]ased on the facts before it, the Court finds

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

### 3.    Common Issues Predominate Because Every Class Member Entered into a Standard Form Loan Agreement to Pay Usurious Interest Rates.

Additionally, the predominance requirement is easily met here because Plaintiff's claims turn on the terms of form contracts common to the whole class. There is no dispute that members of the Class signed materially identical form contracts to re-pay short term installment loans at rates that would be grossly usurious under state law and with form exculpatory provisions that are inapplicable and unenforceable as to the Defendants. "Courts routinely certify classes involving standardized conduct and standard form contracts and documents." *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, *No. 3:15-md-2633-SI,* 2019 WL 3410382, at \*18 (D. Or. July 29, 2019). "Claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action . . . ."[15]

Establishing Martorello's liability under the contracts will "involve no questions of individual reliance" and "no complicated contractual obligations." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 655 (4th Cir. 2019). The only question is whether the loan agreements charge more than twice the amount of interest that state law permits—"a question of law [that] can be resolved for all the class members in a single action." *Nat'l Coalition of 7-Eleven Franchisees v. The Southland Corp.*, 210 F.3d 384, \*2 (9th Cir. 2010). And although interest rates and damages

---

that 'the record does not support a conclusion that the outcome in [the other] jurisdictions would be materially different under local law than under California law'"); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019) ("Subject to constitutional limitations and the forum state's choice-of-law rules, a court adjudicating a multistate class action is free to apply the substantive law of a single state to the entire class.").

[15] *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 411 (S.D.N.Y. 2015) (citation omitted); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Serv., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment."); *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 41 (1st Cir. 2003) (finding predominance satisfied because "[t]he case turn[ed] on interpretation of the form contract").

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

vary among plaintiffs, they easily can "be shown through aggregate records." *Krakauer*, 925 F.3d at 658. Thus, the plaintiffs "can rely largely on common proof." *Id*. Other courts in similar tribal-lending cases have recognized that, "[u]nder these conditions, questions of law and fact common to the class will predominate" in certifying RICO and usury claims like the plaintiffs' here. *MacDonald*, 333 F.R.D. at 349; *see also Inetianbor*, No. 13-6066-CIV-COHN/SELTZER (S.D. Fla., Sept. 19, 2016), attached as Exhibit 1.

### 4. Common Questions Predominate About Enforcement of the Exculpatory Provisions of the Form Loan Agreement.

Common questions also predominate in the context of the choice of law, forum selection, and class action waiver clauses. Defendants are expected to raise the enforcement of one or more of these clauses in opposition to this Motion. First, every court that has reviewed the exculpatory clauses of the form loan agreement has concluded that they are void and/or unenforceable as to the claims against these Defendants. Dkt. 146 at 31-41; Dkt. 156 at 6-7; *Williams*, No. 3:17-cv-461, 2021 WL 2930976, at *7; *Duggan*, No. 18-12277, ___ F. Supp. 3d ___, 2022 WL 952183 at * 16. Second, and perhaps equally important, the legal analysis underlying this issue lends itself to class wide consideration. No individual issues exist, much less predominate.

### 5. Common Questions Predominate About Plaintiff's RICO Claims.

RICO claims like Plaintiff's are particularly well-suited for class treatment because "common issues of fact in a RICO action, concerning the existence of an enterprise and a pattern of racketeering activity are quite substantial" and "would tend to predominate over all but the most complex individual issues." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357-58 (11th Cir. 2009). In a RICO action, "[t]he existence of a conspiracy, and whether the defendants aided and abetted each other" are "issues common to all of the plaintiffs" that "tend[] to predominate." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004). And as another court recently explained:

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

Here, Plaintiffs have shown that common questions predominate for each of the elements of their RICO claim. Whether Defendants engaged in conduct as part of RICO enterprise is common to the class (and raises no individual issues whatsoever), as is whether they did so through the collection of unlawful debt. Plaintiffs can show that Defendants conducted their alleged RICO enterprise through common documentary evidence concerning the relationships between Western Sky Financial and Defendants and the testimony of their officers and employees.

*MacDonald*, 333 F.R.D. at 353.

### 6. Common Questions of Law or Fact Predominate in the Claims for Unjust Enrichment.

Plaintiff will also prove from common evidence that Defendants have been unjustly enriched. An unjust enrichment claim can be certified for class treatment where common circumstances bear upon whether the defendant's retention of a benefit from class members was unjust. *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 647 (S.D. Fla. 2015) (citation omitted). The Oregon Supreme Court analyzed the claim for unjust enrichment in *Larisa's Home Care, LLC v. Nichols-Shields*, 404 P.3d 912, 921 (Or. 2017), holding that courts are to "examine the established legal categories of unjust enrichment as reflected in Oregon case law and other authorities," such as the Restatement (3d) Restitution, "to determine whether any particular enrichment is unjust." Here, the common questions regarding unjust enrichment include: i) whether Defendants obtained a benefit by receiving the overwhelming majority of profits from the illegal lending scheme; ii) whether it would be unjust to permit Defendants to retain that benefit, and iii) the amount that Defendants have been unjustly enriched.

### 7. Common Issues Predominate in Calculating Damages.

Common issues predominate regarding each class member's right to damages and calculating damages. As for damages, Plaintiff is seeking unlawful amounts paid in connection with his loan. With electronic records from the lenders or their account management providers,

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

this amount can be calculated easily for all class members.[16] Because the loans were credited and debited using ACH transactions to and from the consumers' bank accounts, loan collection data objectively will show the relevant transactions, including principal and interest paid, that could be used to calculate damages. For example, the same data that was used in the *Galloway* settlement indicates the following payments of principal and interest by the RICO Class and the Oregon Subclass from October 31, 2014 through December 20, 2019:

| State | Number of loans made to Class members | Number of unique Class members | Amount of principal and/or interest paid by Class members |
|---|---|---|---|
| Oregon | 7,184 | 4,663 | $10,560,851.06 |
| Georgia | 51,527 | 31,596 | $78,901,625.98 |
| Maryland | 25,895 | 16,104 | $42,734,884.14 |
| North Carolina | 26,174 | 15,938 | $37,051,221.60 |

---

[16] *See Krakauer*, 925 F.3d at 658 (finding predominance satisfied where "all of the major issues in the case could be shown through aggregate records"). Because damages will be determined on a class-wide basis without the need for individual inquiries of class members, proving the actual amount of damages at class certification is unnecessary. *See Cardizem CD Antitrust Litig.,* 200 F.R.D. 297, 307 (E.D. Mich. 2001) ("[i]f generalized evidence exists which will prove or disprove this injury element on a simultaneous class-wide basis, then there is no need to examine each class members' individual circumstance as Defendants claim. Such an examination will relate to the quantum of damages; not the fact of injury.") (citing *Zenith Radio Corp.* v. *Hazeltine Research, Inc.,* 395 U.S. 100, 114 n.9, 89 S. Ct. 1562 (1969)); *In re Magnetic Audiotape Antitrust Litig.*, No. 99 CIV. 1580 (LMM), 2001 WL 619305, at *4 (S.D.N.Y. June 6, 2001) ("on a motion for class certification, the Court only evaluates whether the method by which plaintiffs propose to prove class-wide impact could prove such impact, not whether plaintiffs in fact can prove class-wide impact."); *Panache Broad. of Pa., Inc. v. Richardson Elecs., Ltd.*, No. 90 C 6400, 1999 WL 342392, at *6 (N.D. Ill. May 14, 1999) ("the issue in the common impact analysis is the fact, not the amount of injury") (citation omitted).

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

ALCS Decl., ¶¶ 5, 7. There is no need to take evidence from any individual Class member to determine damages. These common questions, and their susceptibility to common proof at trial, satisfy the predominance requirement.

### C. In the Alternative, if the Court Determines that Oregon Law May Not Be Applied to the Class's Claims, the Court Should Certify the Oregon Subclass.

In the alternative, if the Court finds that some material difference exists between Oregon law and the laws of Georgia, Maryland, and North Carolina that would outweigh all of the common issues, the Court should certify the Oregon Subclass. *See Keegan v. Am. Honda Motor Co., Inc.*, 284. F.R.D. 504, 545 (C.D. Cal. 2012) (certifying three state subclasses where material differences existed among state consumer protection laws, holding that "predominance can in this manner be assured").

### D. A Class Action Is Superior to Other Methods for Fair and Efficient Adjudication.

Courts consider four nonexclusive factors in determining whether a class action is superior: (1) the class members' interests in litigating individually in separate actions; (2) the extent and nature of any related litigation already commenced by class members; (3) the desirability of concentrating litigation of the claims in a particular forum; and (4) the manageability of the litigation as a class action. FED. R. CIV. P. 23 (b)(3). In this instance, there are class actions in three courts nationwide seeking to hold Defendants accountable for their egregious misconduct on behalf of consumers residing in other states. This is the only case in which a plaintiff has moved for class certification to hold Defendants liable for their predatory lending to members of the Class.

Efficiency is the primary focus in determining whether a class action is the superior method for resolving the controversy. *See Abdeljalil v. Gen. Elec. Capital Corp*., 306 F.R.D. 303, 311 (S.D. Cal. 2015) (noting a class action may be superior where classwide litigation will reduce costs and promote efficiency and is superior where there is "no realistic alternative"). "[E]ven if just a

Page 27    PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

fraction of the class members were to bring individual suits, the adjudication of the common issues in a single proceeding would be more efficient than the separate adjudication of individual claims."[17] In evaluating efficiency, it is proper for a court to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc*., 503 F.2d 1161, 1165 (7th Cir. 1974).

A class action is the superior method for managing litigation where, as here, no realistic alternative exists. *Leyva v. Medline Indus.*, 716 F.3d 510, 515 (9th Cir. 2013). "In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims." *Id.* "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."[18] This presumption is rooted in the policy that lies "at the very core of the class action mechanism"—namely, "overcom[ing] the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."[19] Here, class litigation is not only the most efficient means of adjudicating these disputes; it is the only means. Separately litigating the common issues that bind the class, whether in hundreds or

---

[17] *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 2018 (E.D. Va. 2015) (citations omitted); *see also White v. E-Loan, Inc.,* 2006 WL 2411420, at *9 (N.D. Cal. 2006) ("given that thousands of consumers may have suffered identical injury, a class action is certainly the most efficient way to adjudicate disputes over those consumers' rights").

[18] *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted); *see also Azar*, 2019 WL 7372658, at *6 (superiority met where individual claims likely too small "to justify the cost and effort of private counsel to file and prosecute individual actions.").

[19] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231 (1997); *see also Henry*, 199 F.R.D. at 573 (finding a class action was superior because "the potential class is composed of individuals so financially strapped that they would borrow money at extremely usurious rates."); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 880 (7th Cir. 2000) (stating in "small-stakes cases, a class suit is the best, and perhaps the only, way to proceed").

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

thousands of individual lawsuits, would be not only contrary to judicial economy, it would be a practical impossibility—even assuming it were economically feasible for consumers to pursue these claims on their own. Here, Plaintiff's attorneys have taken numerous depositions, presented Plaintiff for deposition, reviewed more than a hundred thousand of pages of documents, and briefed multiple dispositive motions, spending thousands of hours doing so. Given the amount of work involved in unraveling this scheme, an individual case worth a few thousand dollars simply is not a viable alternative to a class proceeding. There simply is no other practical means for the Class—mostly low-income consumers—to challenge a practice that stands in uniform violation of Oregon usury law. "The desirability of providing recourse for the injured consumer who would otherwise be financially incapable of bringing suit and the deterrent value of class litigation clearly render the class action a viable and important mechanism in challenging fraud on the public." 6 H. NEWBERG & A. CONTE, NEWBERG ON CLASS ACTIONS § 21:30 (4th ed. 2003).

Given the commonality of issues in this case, class treatment will not raise any significant manageability hurdles. Even if it did, however, "[a] class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter how massive the . . . wrongdoing that will go unpunished if class treatment is denied—to no litigation at all." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). A class action is the only way that class members can be afforded a fair fight to hold Defendants accountable for their predatory lending scheme.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion for Class Certification, appoint Plaintiff Richard L. Smith, Jr. as the class representative, appoint Plaintiff's counsel as class counsel, and grant such other relief as the Court deems warranted.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

Dated: May 2, 2022                          Respectfully submitted,

                                            */s/ Michael A. Caddell*
                                            Michael A. Caddell
                                            mac@caddellchapman.com
                                            Cynthia B. Chapman
                                            cbc@caddellchapman.com
                                            Amy E. Tabor
                                            aet@caddellchapman.com
                                            John B. Scofield
                                            jbs@caddellchapman.com
                                            CADDELL & CHAPMAN
                                            628 East 9th Street
                                            Houston TX 77007-1722
                                            Telephone: 713-751-0400
                                            Facsimile: 713-751-0906

                                            Steve D. Larson, OSB No. 863540
                                            Email: slarson@stollberne.com
                                            Steven C. Berman, OSB No. 951769
                                            Email: sberman@stollberne.com
                                            STOLL STOLL BERNE LOKTING &
                                            SHLACHTER P.C.
                                            209 SW Oak Street, Suite 500
                                            Portland, OR 97204
                                            Telephone: (503) 227-1600
                                            Facsimile: (503) 227-6840

                                            *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2022, this document was filed electronically via the Court's

ECF system and thereby served on all counsel of record.

                                            */s/ John B. Scofield, Jr.*
                                            John B. Scofield, Jr.

Page 30    PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840